UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AUSTIN SMITH, :
      Petitioner :
 :
vs. : Civil Action No: 05-10777-PBS
 :
MICHAEL A. THOMPSON, :
SUPERINTENDENT, :
      Respondent :

**OBJECTION TO REPORT AND
RECOMMENDATIONS OF MAGISTRATE JUDGE**

Now comes the petitioner in the above-entitled Federal Habeas Corpus action and pursuant to Rule 72(b) of the Federal Rules of Civil Procedure hereby objects to the Magistrate Judge's Report and Recommendations:

**A.  Ground One - Fresh Complaint Evidence**

    **THE MAGISTRATE JUDGE ERRED IN CONCLUDING THAT THE STATE COURT WAS CORRECT IN DETERMINING THAT COUNSEL'S DEFICIENT HANDLING OF "FRESH COMPLAINT" EVIDENCE WAS NON-PREJUDICIAL TO THE PETITIONER AND ERRED IN CONCLUDING THAT THE STATE COURT DID NOT UNREASONABLY APPLY STRICKLAND IN REJECTING THIS CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL**

The Magistrate Judge, in making his recommendation rejecting the petitioner's Sixth Amendment challenge to his counsel's performance at trial, first dealt with the manner in which trial counsel handled the "fresh complaint" evidence. The Commonwealth's case rested on "Anna", the eight (8) year old complainant and two (2) "fresh complaint" witnesses.

The petitioner has alleged that his attorney's handling of the fresh complaint testimony was so deficient that the petitioner was denied the effective assistance of counsel under the principles

set forth in the Supreme Court's decision in Strickland v. Washington", 466 U.S. 668 (1984) (hereinafter "Strickland")[1].  The Magistrate Judge agreed that there was a deficiency in counsel's performance at trial as did the state Appeals Court in its decision[2]; but announced "that the question of prejudice resulting from trial counsel's ineptness is a close one".  (R&R-34).  He then undertook a detailed analysis of the nature and impact of "trial counsel's ineptness":

> "Both the volume and the nature of the testimony improperly admitted into evidence is disturbing, especially given that all of the testimony in the case was taken on a single day, July 30, 1997.  <u>The complainant "Anna" was basically permitted to self-corroborate over and over again in minute detail.  This piling on of inadmissable evidence that effectively underscored and buttressed "Anna's" testimony gives rise to concerns of unfairness</u>.  At bottom, the Commonwealth's case was strengthened by the improper admission of this evidence, and 'Strickland clearly allows the Court to consider the cumulative effect of counsel's errors in determining whether a defendant was prejudiced,'"

(R&R-34-35) (Emphasis added)

Nevertheless, the Magistrate Judge rejected petitioner's argument that there was an "unreasonable application"of "Strickland" by the state courts::

> "the Court cannot find that the state court unreasonably applied federal law in rejecting the argument that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694.  It is just as probable that the jury would have found "Anna" credible based solely on the testimony which was properly admitted.  Put another way, there is no reasonable probability that the erroneously admitted evidence would have altered the result".

(R&R-35)

---

[1] The Strickland decision qualifies as "clearly established Federal Law" for the purposes of evaluating ineffective assistance of counsel claims.  Williams v. Taylor, 529 U.S. 362, 371-374 (2000).

[2] Commonwealth v. Smith, 51 Mass. App. Ct. 1116; 749 N.E.2d 722 (2001).

He based this ruling on his view that "although erroneously admitted, the fresh complaint evidence was essentially cumulative." (R&R-35). This finding overlooks the clear prejudicial effect of counsel's errors, which errors the Magistrate Judge meticulously outlined in his report.

First, testimony from "Anna" that she told James Nally, the Department of Social Services investigator; Dr. Nancy Rosselot, the child's pediatrician and the S.A.I.N. interviewer about being sexually abused by the petitioner was not objected to by trial counsel. (Tr. II-40-43)[3]. To compound the error, counsel then elicited an extensive amount of testimony from "Anna" about the details of her statements to others about the beatings and sexual abuse she suffered at the hands of the petitioner. (Tr. II-62-67, 71-73, 78-79- 81-85, 88-90- 92-103, 105-106). Counsel did not request a limiting instruction on "Anna's" testimony regarding these out of court statements. See Commonwealth v. Licata, 412 Mass. 654; 591 N.E.2d 672, 673-674-675 (1992). That allowed the jurors to consider "Anna's" statements as substantive evidence of the truth of her complaints. Id. See Commonwealth v. Lavalley, 410 Mass. 641, 646; 574 N.E.2d 1000, 1003-1004 (1991).

The Magistrate Judge noted that this "self-corroboration" was improper pursuant to the decision in the Commonwealth v. Peters, 429 Mass. 22, 26; 705 N.E.2d 1118, 1121 (1999); a case that "had many parallels to the issues in the instant case." (R&R-34). He correctly found that the statements related to beatings were clearly inadmissable as they did not relate to sexual abuse. Commonwealth v. Peters, 429 Mass. at 27; 705 N.E.2d at 1121; Commonwealth v. Licata, 412 Mass. at 657-658; 591 N.E.2d at 674-675. (R&R-20). Nevertheless, his explanation of the reasons

---

[3]References to the trial transcript will be designated as (Tr.-) followed by volume and page number, references to the Record Appendix will be designated as (RA.-) and to the Report and Recommendations by the Magistrate Judge will be designated as (R&R-) followed by page number.

that Peters was distinguishable from the case at bar was flawed. He correctly noted the differences between a state court's direct review of a criminal conviction and Federal habeas review pursuant to 28 U.S.C. Section 225 4(d)(objectively unreasonable application of Federal law). (R&R-34-35). He acknowledged that the Commonwealth's case was strengthened by the improper admission of "fresh complaint" evidence. (R&R-35). However, he failed to give proper weight to the damage caused by the "piling on" of "fresh complaint" testimony by petitioner's own counsel. See Commonwealth v. Lavalley, 410 Mass. at 646; 574 N.E.2d at 1003-1004.

Numerous examples of improperly elicited testimony by trial counsel on his cross-examination of "Anna" was detailed by the Magistrate Judge. (Tr. II-66-67, 89, 91, 92, 94). Counsel's repetitive recounting of fresh complaint testimony involved "Anna's" statements to her mother, aunt and her grandmother[4], none of whom were called as fresh complaint witnesses at trial. (R&R-20).

Moreover, these fifteen statements regarding the complainant's out-of-court statements to her mother, aunt and grandmother about beatings, sexual abuse, anal rapes and threats (Tr. II-88-89, 92-94) opened the door for the prosecutor to elicit additional testimony of "Anna's" statements to them on re-direct examination. (Tr. II-107-108, 170)[5]. (R&R-23).

The third manner in which trial counsel was deficient in his handling of the fresh complaint evidence was by eliciting "an avalanche of repeated references to the complainant's out-of-court allegations"against the petitioner. The Magistrate Judge noted that this repetitious, harmful

---

[4]"Anna's" mother is referenced as "Miriam"; her aunt is referenced as "Donna" and her grandmother is referenced as "Paula" in Petitioner's Memorandum of Law (Document 11).

[5]In his closing, the prosecutor utilized "Anna's" statements to her aunt and grandmother to argue for conviction. (Tr. III-48).

testimony was elicited with respect to statements made to her mother, aunt and grandmother as noted hereinabove, and in counsel's questioning of her about her statements to James Nally and the S.A.I.N. interviewer, and provided specific examples of such testimony in his Report. (Tr. II-83, 84, 85, 96, 99, 100, 105). (R&R-24-27).

The "tidal wave" of fresh complaint evidence involved a staggering total of eighty-one statements made by witnesses as a result of questioning by petitioner's attorney, each referring to the out-of-court statements made by "Anna" about the petitioner's alleged physical and sexual abuse of her. Having correctly outlined in detail the ineptness of trial counsel, the Magistrate Judge erred by excusing such conduct as non-prejudicial, concluding that " there is no reasonable probability that the erroneously admitted evidence would have altered the result"" (R&R-35). Finding the erroneouly-admitted evidence "essentially cumulative", the Magistrate Judge ignored the real impact of such errors on the outcome of the trial.

There is no question that the trial counsel's errors contributed to the guilty verdicts against him. See Strickland 466 U.S. at 693-694. The Commonwealth's case consisted entirely of the complainant's testimony, corroborated only by fresh complaints. Her credibility, according to the Magistrate Judge was "the lynchpin of the Commonwealth's case". (R&R-34). The Commonwealth possessed no physical evidence to support her unlikely claim that a full-grown man, repeatedly physically and sexually abused her, including anally raping her, when she was a five and six year old girl, in a small apartment, performing the sexual abuse in a way that kept the other two individuals living in the four room apartment from knowing about this such abuse.

The petitioner's defense was that "Anna" was fabricating the charges at the suggestion of her mother, aunt and grandmother in order to ensure that he would be kept away from the mother

and her children. There was evidence introduced, including restraining orders, that the petitioner and complainant's mother were physically abusive toward each other, and that the aunt and grandmother were hostile toward the petitioner. (Tr. II-61, 197; Tr. III-5-7). There was also evidence that for a period of several weeks after he had left the home, the mother was hospitalized, and the complainant and her brother lived with the aunt and grandmother. (Tr. II-62-67, 69). It was after one of these periods that "Anna's" aunt reported physical abuse to the Department of Social Services, which led Mr. Nally to interview "Anna". (Tr. II-147-148,159-169).

In characterizing the erroneously admitted evidence as "essentially cumulative", the Magistrate Judge overlook serious weaknesses in the Commonwealth's case including the following:

(1) the fact that the Commonwealth had evidence from "Anna" that the petitioner beat his son with a belt but it only charged him with respect to the alleged beating of the complainant (Tr. III-21-22);

(2) the Commonwealth had evidence from "Anna" that the petitioner sexually assaulted at least two of the complainant's friends (Tr. II-96) but the Department of Social Services never investigated such charges, and the Commonwealth did not charge nor did it seek to charge the petitioner on such charges (Tr. III-22-23);

(3) allegations from "Anna" that the beatings left her bruised, marked, and otherwise scarred and her display at trial of a scar on her arm which she alleged to have received from such a beating, and her testimony that she told Dr. Rosselot of the beatings and marks, but the doctor denied the fact that "Anna" reported such abuse, and further, there was no evidence that over the nine month period that the petitioner lived with the complainant, anyone ever saw any scar or any

other evidence of physical abuse (Tr. III-23-27);

  (4) "Anna" testified to repeated anal rapes by the petitioner but there was no physical evidence of such abuse, and no evidence that anyone ever knew, over the several months that this abuse was alleged to have taken place, that anything was wrong with her (Tr. III; 23-27, 33);

  (5) "Anna" allegedly told the Department of Social Services investigator, Jim Nally that the petitioner hit her on the bare bottom, one of the reasons that he began to inquire about sexual abuse and testified at trial that petitioner never pulled down her pants when he hit her - - he only struck her on top of her clothes (Tr. III-31);

  (6) "Anna" testified to repeated instances of threats from the petitioner that he would kill her family if she reported the abuse, but she never told the Department of Social Services about any such threats (Tr. III-32-33);

  (7) "Anna's" first testified that the assaults took place in the day but later contradicted herself and said that they took place at night, when her mother and brother were asleep (Tr. III-33);

  (8) "Anna" testified about the many locations of the sexual assaults, but she never told the worker from the Department of Social Services about such places (Tr. III-34);

  (9) "Anna" allegedly told the Department of Social Services investigator that the petitioner had penetrated her vagina with his finger but she denied such penetration in her report to Dr. Rosselot, and the petitioner was never indicted for such penetration (Tr. III-34-35);

  (10) "Anna" first testified that when the petitioner hit her with the belt, he did so when they were alone in her bedroom, but later testified that her brother was in the room when it happened, and then she changed her story again to say that her brother and her mother were in the

room when it happened[6] (Tr. III-35); and

(11) The Commonwealth indicted the petitioner alleging that the crimes at issue took place between December, 1993 and May 31, 1995.  However, by the admission of the Commonwealth's own witness, the petitioner was only living with "Anna" from approximately June, 1994 through March, 1995 (Tr. III-19-20).

Such inconsistencies in testimony show that the Commonwealth's case was far from overwhelming, See United States v. Cormier, 468 F.3d 63, 74 (1st Cir. 2006); Commonwealth v. Phinney; 446 Mass. 155, 167; 843 N.E.2d 1024, 1034 (2006),  heightening the prejudicial impact created by trial counsel's inept handling of the fresh complaint testimony.  The Magistrate Judge failed to appreciate the devasting damage to the petitioner's case caused by counsel's persistent questioning.

Determining prejudice may be difficult. See  Ouber v. Guarino, 293 F.3d 19, 25-26 (1st Cir. 2002).  Nevertheless, as the Magistrate Judge stated "prejudice more often exists in a close case where the record only weakly supports the jury's findings".  (R&R-16).  Such is the case here, with the complainant's credibility at issue and the weaknesses in the Commonwealth's case,  this is a "close case" where the prejudice created by counsel's "over the top" questioning  is clear.  See Commonwealth v. Peters, 429 Mass. at 33; 705 N.E.2d at 1125.   ("Where the case hinged on the issue of credibility, the deficient representation provided by defendant's counsel, and what flowed from it, cast doubt on the validity of the jury's verdicts.")

It follows that there is  "a reasonable probability that, but for counsel's unprofessional

---

[6] At one point "Anna" made the extremely improbable claim that she was anally raped by the petitioner in the same room as her sleeping brother.  (Tr. II-85).

errors, the result of the proceedings would have been different", Strickland, 466 U.S. at 693-694, keeping in mind that "although the possibility of a different outcome must be substantial in order to establish prejudice, it may be less than fifty percent".  Ouber v. Guarino, 293 F.3d at 25-26; See Strickland, 466 U.S. at 693 (explaining that "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case.")

### B.  Ground Two - Failure To Introduce Scientific Evidence

**THE MAGISTRATE JUDGE ERRED IN CONCLUDING THAT TRIAL COUNSEL'S FAILURE TO INTRODUCE SCIENTIFIC EVIDENCE DID NOT CONSTITUTE INEFFECTIVE ASSISTANCE OF COUNSEL AND ERRED IN CONCLUDING THAT THE STATE COURT'S DECISION ON THIS ISSUE WAS NOT AN UNREASONABLE APPLICATION OF "STRICKLAND"**

The petitioner contends that his counsel was deficient because he failed to introduce scientific evidence[7] to challenge "Anna's" claims of repeated anal rapes.  Such scientific evidence would also have refuted Dr. Nancy Rosselot's testimony explaining the reason that she found no physical evidence of anal rape when she examined Anna on June 19, 1995.

Dr. Rosselot had testified that after being informed of allegations of anal rape, she would look for "a crack or a tear, an open bleeding area, or perhaps an abrasion or scraped looking area . . . a tiny crack or what we would call a fissure" at the child's anus, but she also stated that any such injury would heal within approximately twenty-four hours.  (Tr. II-120-121).

The petitioner contended that scientific evidence would show that anal fissures cause "knife-like pain with bowel movements", and in the approximately one-half of patients who

---

[7]See Gray, Roscoe N., Attorneys' Textbook of Medicine, Section 229.100 (page 229-46), Matthew Bender & Co. Inc., updated through Release No. 104, March, 1999, which appears at R. 58.

heal with conservative treatment for such fissures, such healing takes about a month, not twenty-four hours[8]. Not only would such evidence have directly cast doubt on Dr. Rosselot's overall credibility, it also would have lent significant support to the petitioner's defense that the allegations of abuse were simply false. If she suffered the type of abuse she alleged, one potential result was a condition which caused "knife-like pain" with bowel movements, which condition would take a month to heal. Such condition would be impossible to overlook.

The Magistrate Judge rejected this argument and failed to find a deficiency or prejudice in counsel's failure to challenge the testimony of the doctor. He reasoned that the treatise does not speak in term of certainties and could not have cast substantial doubt on the doctor's testimony. He continued:

> "even if the treatise was definitive in its evaluation of healing time so as to challenge directly Dr. Rosselot's testimony, as applied to the facts in this case it would have no prejudicial effect". Because more than a month has passed since the last possible interaction between "Anna" and the petitioner and "Anna's" examination by Dr. Rosselot, even according to the treatise, she could have been healed by the time she was seen by the doctor. In these circumstances, introduction of the treatise would not have contradicted or otherwise impeached Dr. Rosselot's testimony".

(R&R-39)

Producing a challenge to the doctor's testimony, such treatise evidence would have provided the jury with evidence that it was unlikely that "Anna" had been anally raped, undermining her credibility, "the lynchpin of the Commonwealth's case" and thereby "accomplishing something material for the defense". Commonwealth v. Satterfield, 373 Mass.

---

[8] On March 20, 1997 a Motion for Funds filed with the Superior Court was allowed. Counsel was permitted to hire an expert with state funding to assist him with this issue. (RA. 4). However, it appears that no expert was retained by trial counsel.

109, 115, 364 N.E.2d 1260, 1264 (1977).

The State Court's determination that this claim of error was "insubstantial" was "objectively unreasonable" and was an "unreasonable application of Strickland". See Wiggins v. Smith, 539 U.S. 510, 521 (2003); Ouber, 293 F.3d at 25-26. Accordingly, the refusal to find that the petitioner was the recipient of "ineffective" representation on the basis of the failure to introduce scientific evidence was therefore an "unreasonable application" of Strickland. See Ferensic v. Birkett, 451 F. Supp. 2d. 874, 887 (E.D. Mich. 2006). The Magistrate Judge erred in failing to reach this conclusion. See Strickland, 466 U.S. at 693-694.

**C. Ground Three - Failure To Call Complainant's Mother As Defense Witness**

> **THE MAGISTRATE JUDGE ERRED IN CONCLUDING THAT THE FAILURE TO PRESENT COMPLAINANT'S MOTHER AS A WITNESS WAS NOT INEFFECTIVE ASSISTANCE OF COUNSEL AND ERRED IN CONCLUDING THAT THE DECISION OF THE STATE COURT ON THIS ISSUE WAS NOT AN UNREASONABLE APPLICATION OF "STRICKLAND"**

The petitioner contends that failing to present "Miriam", "Anna's" mother, as a witness for the defense constituted ineffective assistance of counsel. The argument is based on the likelihood that her testimony would have provided the jury with statements concerning the animosity between the petitioner and Miriam and significantly bolstered his contention that she and her sister and her mother manipulated "Anna" into filing false sexual assault charges against him. The petitioner's affidavit in support of his Motion for New Trial outlines the reasons that such testimony was crucial. (RA. 45-46).

"Anna's" mother, knew that "Anna", despite her accusations of horrendous and despicable acts by the petitioner, wanted to visit him (RA. 45) and also knew that the petitioner

was so hated by her sister and mother that each of them repeatedly threatened to ensure that he would return to prison. (RA. 46). The affidavit further states that Miriam knew that the day after the petitioner received a refund check from the Internal Revenue Service, she initiated proceedings against him for domestic violence allegedly committed two weeks prior to that date, and obtained a restraining order against him. (RA. 46). After his arrest and release on those charges, he accused her of stealing Five Hundred ($500.00) Dollars from him while he was incarcerated, and demanded that she return the money; when she refused, he retaliated by reporting her to authorities for welfare fraud. (RA. 46). Thereafter, the petitioner was convicted of violating a restraining order, and while incarcerated on that conviction, was accused of these sexual assault charges. (RA-46).

Trial counsel was ineffective in foregoing the opportunity to show (1) that after the allegations of almost unspeakable brutality committed against "Anna", she wanted to visit him, and (2) that shortly after the petitioner accused Miriam of public assistance fraud, he was accused of the crimes in this matter. Moreover, had the attorney called "Anna's" mother to testify, she may have revealed her comment to Scott Keller, a private investigator, a week after the trial was concluded; specifically, that "Anna" had told her that she had fabricated the charges against the petitioner. (RA. 44).

The Magistrate Judge in rejecting this claim characterized "Anna's" mother as likely to be hostile to the petitioner, and not helpful. He concluded:

> "Choosing not to present the jury with a potentially hostile witness who
> had been embroiled in a pattern of animosity towards the defendant, and
> not knowing with certainty what she would say on the witness stand, was
> quite clearly a "tactical decision" that does not constitute Strickland
> error".

(R&R-41)

If such a decision was in fact a "tactical decision", it was "manifestly unreasonable". See Commonwealth v. Conley, 43 Mass. App. Ct. 385, 392; 683 N.E.2d 687, 692 (1997). Commonwealth v. Adams, 374 Mass.722,728; 375 N.E.2d 681, 685 (1978). However, even if a decision can be characterized as "tactics" or as "trial strategy", it does not render counsel's decisions immune from scrutiny. Commonwealth v. Hernandez, 63 Mass. App. Ct. 426, 432; 826 N.E.2d (2005). Careful scrutiny of counsel's decision reveals that the prosecutions's version of events was not corroborated by any physical evidence, and that there were many inconsistencies in "Anna's" testimony as set forth herein[9], making the case against petitioner far from overwhelming. See United States v. Jenkins, 499 F. Supp. 2d 1268, 1279 (M.D. Fla. 2007); Commonwealth v. Cruz 53 Mass. App. Ct. 393, 405; 759 N.E.2d 723, 734 (2001).

It follows that testimony that "Anna", the only source of evidence against the petitioner, had told her mother that she had fabricated the sexual assault would have assisted the petitioner and would have been a real factor in the jury's deliberations. See Strickland, 466 U.S. at 693-694. In addition to such exculpatory evidence, the evidence of bias as outlined in the petitioner's affidavit (RA-45-46), would have provided ample ammunition to support the petitioner's claim that "Miriam" and her sister and mother had persuaded "Anna" to make-up these accusations.

But for this failure of counsel, "there is a reasonable probability the result of the proceedings would have been different." See Strickland, 466 U.S. at 694. The state courts refusal to find that the petitioner was the recipient of "ineffective" representation on the basis of

---

[9]See pages 6, 7 and 8 of this Objection.

counsel's failure to call "Anna's" mother as witness was therefore an "unreasonable application" of Strickland. See Ferensic v. Birkett, 451 F. Supp. 2d.at 887. It was error for the Magistrate Judge to conclude that the state courts properly applied Strickland.

### D. Ground Four - Grand Jury Proceedings

**THE MAGISTRATE JUDGE ERRED IN CONCLUDING THAT TRIAL COUNSEL'S FAILURE TO PROPERLY CHALLENGE INFORMATION PRESENTED TO THE GRAND JURY WAS NOT INEFFECTIVE ASSISTANCE OF COUNSEL AND ERRED IN CONCLUDING THAT SUCH DECISION BY THE STATE COURTS WAS NOT AN UNREASONABLE APPLICATION OF STRICKLAND**

The petitioner contends that counsel was deficient in failing to bring to the Court's attention the fact that petitioner had been incarcerated during part of the time described in the indictments, December 2, 1993 through May 31, 1995. Trial counsel was well aware that petitioner was incarcerated from before December, 1993, continuously through his release on May 3, 1994. Yet he never argued this on October 1, 1996 during the hearing on his Motion to Dismiss[10]. This information was critical, because in her grand jury testimony, the same witness that had given inaccurate information regarding whether the complainant was examined by Dr. Rosselot told the grand jury, in response to a question from a juror, that the petitioner lived with the complainant in her house[11].

---

[10] A copy of the Court's ruling on petitioner's Motion to Dismiss is reproduced at Res. Sup. Ans. I, Exhibit 4.

[11] The motion judge acknowledged that potentially exculpatory evidence had been improperly withheld from the Grand Jury. In particular, whether "Anna" had been examined by a doctor after she made her allegations. (RA-39-41) However, the motion was denied by the Court (Brassard, J.) as the withheld information was not sufficiently significant to have made a difference in the jury deliberations. (RA-41)

Trial counsel should have supported his contention that the prosecutor presented distorted evidence to the grand jury with this additional example of the prosecutor's failure to correct testimony he knew or should have known to be misleading.  If the motion judge had been aware that the prosecutor's failure to correct the misleading testimony regarding Dr. Rosselot was not an isolated instance, and had also been aware of this second mishandled request concerning the period during which the petitioner was incarcerated, he might well have reached a different result in ruling on the Motion to Dismiss.  See Commonwealth v. O'Dell, 392 Mass. 445, 446-447; 466 N.E.2d 828, 830-831 (1984).

The Magistrate Judge in rejecting this argument failed to address this specific argument and concentrated his decision on whether there was misconduct by the prosecutor in the presentation to the Grand Jury.  (R&R-44).  Characterizing the witness' answer as "vague" but responsive to the inquiry concerning the time that the petitioner was living with Anna, he noted:

> "absent evidence of 'prosecutorial misconduct that actually biases the grand jury in performing its fact find function', error will not be found.  Casas, 425 F.3d at 38 quoting United States v. Maceo, 873 F.2d 1, 3 (1st Cir.), cert. denied, 493 U.S. 840 (1989).  This incident did not provide a legal basis to challenge the grand jury proceedings.  Flores-Rivera, 56 F.3d at 328."

(R&R-44)

He then concluded that the failure to include this incarceration information in his motion to dismiss did not constitute ineffective assistance of counsel.  (R&R-44)

The Magistrate Judge answer to the Grand Juror's question was more than just vague, it was misleading and likely "biased the jury in performing its fact finding function".  See United States v. Casas, 425 F.3d 23, 38 (1st Cir. 2005) cert. denied 547 U.S. 1061 (2006);

Commonwealth v. O'Dell, 392 Mass. at 446-447; 466 N.E.2d at 830-831.

Accordingly, referencing the distorted and misleading evidence in his argument would have likely resulted in a different result on the Motion to Dismiss, thereby "accomplishing something material for the defense". Commonwealth v. Satterfield, 373 Mass. at 115; 364 N.E.2d at 1264. See Ouber 293 F 3d at 33.

The refusal to find that the petitioner was the recipient of "ineffective" representation on the basis of his handling of the Motion to Dismiss was therefore an "unreasonable application" of Strickland by the state courts. See Ferensic v. Birkett, 451 F. Supp. 2d.at 887. The Magistrate Judge erred in failing to make such a finding. See Strickland, 466 U.S. at 693-694.

### E.  Ground Five - Aggregate of Claims of Ineffectiveness of Counsel

**<u>THE MAGISTRATE JUDGE FAILED TO ADDRESS THE PETITIONER'S ARGUMENT THAT THE MULTIPLE ERRORS OF TRIAL COUNSEL WERE SO DEFICIENT THAT ABSENT THE FLAWED REPRESENTATION IT WAS REASONABLY LIKELY THAT THE JURY'S VERDICT WOULD HAVE BEEN DIFFERENT</u>**

The petitioner contends that the multiple errors made by his trial attorney in connection with the fresh complaint evidence, when viewed in conjunction with his failure to introduce available scientific evidence to undercut a significant aspect of the Commonwealth's case ( Dr. Rosselot's testimony), his failure to use evidence available to him to support petitioner's theory that the complainant was manipulated by "Anna's" mother, aunt and grandmother due to the animosity between the petitioner and the mother's family and his failure to adequately support his Motion to Dismiss the indictments clearly establish that his attorney's representation fell well below that of the ordinary, fallible lawyer. See Strickland, 466 U.S. at 695-696. These

errors must be considered in combination, and in doing such analysis it is reasonably likely that the jury's decision would have been different absent his flawed representation.  See <u>Lindstadt v. Keane</u>, 239 F.3d 191, 199 (2nd Cir. 2001); (errors should be considered in the aggregate); <u>Stouffer v. Reynolds</u>, 168 F.3d 1155, 1163-1164 (10th Cir. 1999) ["taken alone, no one instance establishes deficient representation.  However, cumulatively, each failure underscores a fundamental lack of formulation and direction in presenting a coherent defense"].  See <u>Commonwealth v. Cancel</u>, 394 Mass. 567, 576; 476 N.E.2d 610, 617 (1985)[12].

The Magistrate Judge in his Report and Recommendations addressed an argument not argued in the petitioner's Memorandum of Law (Ground Five-Failure to Obtain and Present Evidence At Trial) but did not address this issue, which was raised on pages 19 and 20 of the petitioner's Memorandum.  Nevertheless, the petitioner has shown that by refusing to recognize the prejudice created by the multiple errors of counsel, the state courts unreasonably applied "<u>Strickland</u>".  See <u>Stouffer v. Reynolds</u>, 168 F.3d at1163-1164.  The Magistrate Judge 's failure to address this meritorious issue was error. See <u>Strickland</u> 466 U.S. at 693-694.

## CONCLUSION

For the reasons set forth herein, the Magistrate Judge erred in his Report and Recommendations requiring review by the Federal District Court pursuant to Rule 72(b)3, habeas relief should be granted.

---

[12]The Magistrate Judge acknowledged in his discussion of "fresh complaint" evidence that "<u>Strickland</u>" allowed the Court to consider the "cumulative" effect of trial counsel's errors in determining the issue of prejudice.  (R&R-35).

        Austin Smith
        By His Attorney,


        /s/ Kenneth G. Littman
        Kenneth G. Littman, Esquire - BBO No: 302060
        251 Cherry Street
        Fall River, MA 02720
        Tel: (508) 675-8900


**CERTIFICATE OF SERVICE**

I certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including Maura D. McLaughlin, counsel for Michael A. Thompson, Superintendent, the Respondent in this matter.

        /s/ Kenneth G. Littman
        Kenneth G. Littman, Esquire