UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AUSTIN SMITH,                    :
       Petitioner       :
                                 :
vs.                              :   Civil Action No: 05-10777-PBS
                                 :
MICHAEL A. THOMPSON,             :
SUPERINTENDENT,                  :
       Respondent       :

**MEMORANDUM OF LAW IN SUPPORT OF**
**REQUEST FOR CERTIFICATE OF APPEALABILITY**

       The Petitioner in the above-referenced matter has filed a Notice of Appeal and sought a Certificate of Appealability (hereinafter "COA") from the denial of his Petition for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. Section 2254. This Memorandum is offered in support of that request.

**Standard of Review**

       28 U.S.C. Section 2253 (c)(2) provides that in order to obtain a "COA", an applicant must make a "substantial showing of the denial of a constitutional right". The United States Supreme Court, has defined this standard as requiring a Petitioner to show:

> "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." [Slack v. McDaniel,] 529 U.S. [473], at 484 (2002) (quoting Barefoot [v. Estelle, 462 U.S. 880,] n.4 [1983)].
>
> The COA determination under Section 2253 (c) requires an overview of the claims in the habeas petition and a general assessment of their m` erits. <u>We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason.</u> This threshold inquiry does not require full consideration of the factual or legal bases adduced in

-1-

> support of the claims.  In fact, the statute forbids it. . . . [A] COA
> does not require a showing that the appeal will succeed.  Accordingly,
> a Court of Appeals should not decline the application for a COA merely
> because it believes the applicant will not demonstrate an entitlement
> to relief. . . .  <u>It is consistent with Section 2253 that a COA will issue
> in some instances where there is no certainty of ultimate relief.</u> . . .
> [I]ssuance of a COA must not be pro forma or a matter of
> course.  A prisoner seeking a COA must prove "'something more
> than the absence of frivolity'" or the existence of mere "good faith"
> on his or her part.  <u>Barefoot</u>, supra, at 893.  We do not require
> petitioner to prove, before the issuance of a COA, that some jurists
> would grant the petition for habeas corpus.  Indeed, a claim can be
> debatable even though every jurist of reason might agree, after the
> COA has been granted and the case has received full consideration,
> that petitioner will not prevail."

<u>Miller El v. Cockrell</u>, 537 U.S. 322, 336-338 (2003).  (Emphasis added)

There is no question that a Federal District Court Judge has the power to issue a "COA", the First Circuit having held that a District Court has authority to issue a "COA" in the first instance.  See <u>Grant-Chase v. Commissioner</u>, 145 F.3d 431, 435 (1st Cir.), <u>cert. denied</u>, 525 U.S. 941 (1998) ("..every court of appeals that has considered the question has concluded that a district judge may issue a "COA." . . . [W]e endorse the[se] views . . . . and explicitly now hold that a district judge has the authority under the AEDPA to issue a "COA" under 28 U.S.C. Section 2253(c) and Fed. R. App. P. 22(b)").  See <u>Tiedman v. Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

### **<u>THE DEFENDANT WAS DEPRIVED OF HIS
FEDERAL CONSTITUTIONAL RIGHT TO
THE EFFECTIVE ASSISTANCE OF COUNSEL</u>**

The Petitioner has alleged that in several instances his attorney's handling of his case was so deficient that he was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.  See <u>Kimmelman v. Morrison</u>, 477 U.S.

365, 377-378 (1986) ("the right to counsel is the right to the effective assistance of counsel"). The Petitioner has further alleged that the state courts have "unreasonably applied" the principles set forth in the Supreme Court's decision in Strickland v. Washington", 466 U.S. 668, 693-694 (1984) (hereinafter "Strickland")[1]. See Wiggins v Smith 539 U.S. 510, 521 (2003). The issue to be resolved here is whether any of the five specific claims of ineffective assistance of counsel raised constitute a "substantial showing of the denial of a constitutional right". 28 U.S.C. Section 2253(c)(2).

The Magistrate Judge in his report agreed that there was a deficiency in counsel's performance at least as it related to one issue, his handling of the fresh complaint evidence. The Massachusetts Appeals Court in its decision agreed that counsel's performance was deficient but affirmed the conviction[2]. The Magistrate Judge stated "that the question of prejudice resulting from trial counsel's ineptness is a close one". (R&R-34). Nevertheless, he as well as the Federal District Court Judge found no prejudice entitling the Petitioner to habeas relief. The Petitioner strongly disagrees with these findings.

### A. Ground One - Fresh Complaint Evidence

The first issue addressed was the manner in which trial counsel handled the "fresh complaint" evidence, the Commonwealth's case resting on the testimony of "Anna", the eight year old complaining witness and two fresh complaint witnesses. Finding a deficiency in counsel's performance, the Magistrate Judge undertook a detailed analysis of the nature and impact of "trial

---

[1] The Strickland decision qualifies as "clearly established Federal Law" for the purposes of evaluating ineffective assistance of counsel claims. Williams v. Taylor, 529 U.S. 362, 371-374 (2000).

[2] Commonwealth v. Smith, 51 Mass. App. Ct. 1116; 749 N.E.2d 722 (2001).

counsel's ineptness":

> "Both the volume and the nature of the testimony improperly admitted into evidence is disturbing, especially given that all of the testimony in the case was taken on a single day, July 30, 1997. <u>The complainant "Anna" was basically permitted to self-corroborate over and over again in minute detail. This piling on of inadmissable evidence that effectively underscored and buttressed "Anna's" testimony gives rise to concerns of unfairness</u>. At bottom, the Commonwealth's case was strengthened by the improper admission of this evidence, and '<u>Strickland</u> clearly allows the Court to consider the cumulative effect of counsel's errors in determining whether a defendant was prejudiced,'"

(R&R-34-35) (Emphasis added)

Nevertheless, the Magistrate Judge rejected the Petitioner's argument that there was an "unreasonable application"of "<u>Strickland</u>" by the state courts. (R&R-35)  He based this ruling on his view that "although erroneously admitted, the fresh complaint evidence was essentially cumulative." (R&R-35).  The District Court Judge in adopting the Report and Recommendations agreed, stating that " there is no reasonable probability the result would have been different particularly since there were two fresh complaint witnesses and appropriate limiting instructions". This finding led to the denial of the petition and overlooks the clear prejudicial impact of counsel's errors.

  These errors are meticulously outlined in the Magistrate Judge's Report[3].  First, testimony from "Anna" that she told James Nally, the Department of Social Services investigator; Dr. Nancy Rosselot, the child's pediatrician and the S.A.I.N. interviewer about being sexually abused by the Petitioner was not objected to by trial counsel. (Tr.II-40-43).  To compound the error, counsel then

---

[3]References to the trial transcript will be designated as (Tr.-) followed by volume and page number, references to the Record Appendix will be designated as (RA.-) and to the Report and Recommendations by the Magistrate Judge will be designated as (R&R-) followed by page number.

elicited an extensive amount of testimony from "Anna" about the details of her statements to others about the beatings and sexual abuse she suffered at the hands of the petitioner. (Tr. II-62-67, 71-73, 78-79- 81-85, 88-90- 92-103, 105-106). Counsel did not request a limiting instruction on "Anna's" testimony regarding any of these out of court statements. See Commonwealth v. Licata, 412 Mass. 654; 591 N.E.2d 672, 673-674-675 (1992). This omission allowed the jurors to consider "Anna's" statements as substantive evidence of the truth of her complaints. Id. See Commonwealth v. Lavalley, 410 Mass. 641, 646; 574 N.E.2d 1000, 1003-1004 (1991).

The Magistrate Judge noted that this "self-corroboration" was improper pursuant to the decision in the Commonwealth v. Peters, 429 Mass. 22, 26; 705 N.E.2d 1118, 1121 (1999); a case that he noted "had many parallels to the issues in the instant case." (R&R-34). He correctly found that the statements related to beatings were clearly inadmissable as they did not relate to sexual abuse. Commonwealth v. Peters, 429 Mass. at 27; 705 N.E.2d at 1121; Commonwealth v. Licata, 412 Mass. at 657-658; 591 N.E.2d at 674-675. (R&R-20). He further acknowledged that the Commonwealth's case was strengthened by the improper admission of "fresh complaint" evidence. (R&R-35). Nevertheless, he and District Court failed to give proper weight to the damage caused by the "piling on" of "fresh complaint" testimony by petitioner's own counsel. See Commonwealth v. Lavalley, 410 Mass. at 646; 574 N.E.2d at 1003-1004.

There were numerous examples of improperly elicited testimony by trial counsel during his cross-examination of "Anna" (Tr. II-66-67, 89, 91, 92, 94); which involved "Anna's" statements to her mother, aunt and her grandmother[4], none of whom were called as fresh complaint witnesses at

---

[4]"Anna's" mother is referenced as "Miriam"; her aunt is referenced as "Donna" and her grandmother is referenced as "Paula" in Petitioner's Memorandum of Law (Document 11).

trial. (R&R-20). Moreover, these fifteen statements regarding the complainant's out-of-court statements to her mother, aunt and grandmother about beatings, sexual abuse, anal rapes and threats (Tr. II-88-89, 92-94) opened the door for the prosecutor to elicit additional testimony of "Anna's" statements to them on re-direct examination. (Tr. II-107-108, 170)[5]. (R&R-23).

Trial counsel was deficient in his handling of the fresh complaint evidence by eliciting "an avalanche of repeated references to the complainant's out-of-court allegations"against the petitioner. This repetitious, harmful testimony was elicited with respect to statements made to her mother, aunt and grandmother as noted hereinabove, and in counsel's questioning of her about her statements to James Nally and the S.A.I.N. interviewer, and provided specific examples of such testimony in his Report. (Tr. II-83, 84, 85, 96, 99, 100, 105) (R&R-24-27).

This "tidal wave" of fresh complaint evidence involved a staggering total of eighty-one statements made by witnesses as a result of questioning by the Petitioner's attorney, each referring to out-of-court statements made by "Anna" related to her allegations of physical and sexual abuse by the Petitioner. Having correctly outlined in detail the ineptness of trial counsel, the Magistrate Judge inexplicably excused such performance as non-prejudicial, concluding that "there is no reasonable probability that the erroneously admitted evidence would have altered the result". (R&R-35). Finding the erroneously-admitted evidence "essentially cumulative", the Magistrate Judge and the District Court Judge ignored the true impact of such errors on the outcome of the trial. See Strickland, 466 U.S. at 693-694.

These errors contributed to the guilty verdicts against the Petitioner. The Commonwealth's

---

[5] In his closing, the prosecutor utilized "Anna's" statements to her aunt and grandmother to ask for a conviction. (Tr. III-48).

case consisted entirely of the complainant's testimony, corroborated only by fresh complaint testimony. "Anna's" credibility, according to the Magistrate Judge was "the lynchpin of the Commonwealth's case". (R&R-34). The Commonwealth possessed no physical evidence to support her unlikely claim that a full-grown man, repeatedly physically and sexually abused her, including anally raping her, when she was a five and six year old girl, in a small apartment, performing the sexual abuse in a way that kept the other two individuals living in the four room apartment from knowing about such abuse.

  The Petitioner's defense was that "Anna" was fabricating the charges at the suggestion of her mother, aunt and grandmother in order to ensure that he would be kept away from the mother and her children. There was evidence introduced, including restraining orders, that the Petitioner and complainant's mother were physically abusive toward each other, and that the aunt and grandmother were hostile toward the Petitioner. (Tr. II-61, 197; Tr. III-5-7). There was also evidence that for a period of several weeks after the Petitioner had left the home, the mother was hospitalized, and the complainant and her brother lived with the aunt and grandmother. (Tr. II-62-67, 69). It was after one of these periods that "Anna's" aunt reported physical abuse to the Department of Social Services, which led to the charges. (Tr. II-147-148,159-169).

  Moreover, there were serious weaknesses in the Commonwealth's case which were detailed by the Petitioner at pages six, seven and eight of his Objection[6]. Such inconsistencies in testimony show that the Commonwealth's case was far from "overwhelming", heightening the prejudicial impact created by trial counsel's inept handling of the fresh complaint testimony. See United States v. Cormier, 468 F.3d 63, 74 (1st Cir. 2006); Commonwealth v. Phinney; 446 Mass. 155, 167; 843

---

[6]See Document No. 25, pages 6, 7 and 8.

N.E.2d 1024, 1034 (2006).

The Magistrate Judge pointed out that "prejudice more often exists in a close case where the record only weakly supports the jury's findings". (R&R-16). This is such a case. Given the problems with the complainant's credibility, the record barely supports the jury verdict, magnifying the prejudicial impact of counsel's " over the top" questioning. See Commonwealth v. Peters, 429 Mass. at 33; 705 N.E.2d at 1125. ("Where the case hinged on the issue of credibility, the deficient representation provided by defendant's counsel, and what flowed from it, cast doubt on the validity of the jury's verdicts.")  The Court overlooked the devastating damage to the Petitioner's case caused by counsel's persistent improper questioning.

Based on this argument, this Court's rejection of this clear claim of prejudice was unreasonable. The Petitioner has, at the very least, made a "substantial showing of the denial of a constitutional right". 28 U.S.C. Section 2253 (c) (2). Stated differently, "the District Court's application of AEDPA to Petitioner's constitutional claims . . . was debatable amongst jurists of reason". Miller El, 537 U.S. at 337. Therefore, this Court should issue a "COA". Id. at 338 ("a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that Petitioner will not prevail").

### B. Ground Two - Failure To Introduce Scientific Evidence

The Petitioner contends that his counsel was deficient because he failed to introduce scientific evidence[7] to challenge "Anna's" claims of repeated anal rapes. Such scientific evidence would also have refuted Dr. Nancy Rosselot's testimony explaining the reason that she

---

[7] See Gray, Roscoe N., Attorneys' Textbook of Medicine, Section 229.100 (page 229-46), Matthew Bender & Co. Inc., updated through Release No. 104, March, 1999, which appears at R. 58.

found no physical evidence of anal rape when she examined Anna on June 19, 1995.

Dr. Rosselot had testified that after being informed of allegations of anal rape, her examination involved looking for "a crack or a tear, an open bleeding area, or perhaps an abrasion or scraped looking area . . . a tiny crack or what we would call a fissure" at the child's anus, but she also stated that any such injury would heal within approximately twenty-four hours. (Tr. II-120-121).

The Petitioner contended that scientific evidence would show that anal fissures cause "knife-like pain with bowel movements", and in the approximately one-half of patients who heal with conservative treatment for such fissures, such healing takes about a month, not twenty-four hours[8]. Not only would such evidence have directly cast doubt on Dr. Rosselot's overall credibility, it also would have lent significant support to the Petitioner's defense that the allegations of abuse were simply false. If she suffered the type of abuse she alleged, one potential result was a condition which caused "knife-like pain" with bowel movements, which condition would take a month to heal. Such condition would have been impossible to overlook by the physician.

The Magistrate Judge rejected this argument and failed to find a deficiency or prejudice in counsel's failure to challenge the testimony of the doctor. He reasoned that the treatise does not speak in term of certainties and could not have cast substantial doubt on the doctor's testimony, given the time that had elapsed between the assault and the examination. ( R&R-39).

Producing a challenge to the doctor's testimony, such treatise evidence would have

---

[8]On March 20, 1997 a Motion for Funds filed with the State Superior Court was allowed. Counsel was permitted to hire an expert with state funding to assist him with this issue. (RA. 4). However, it appears that no expert was retained by trial counsel.

provided the jury with evidence that it was unlikely that "Anna" had been anally raped, undermining her credibility, "the lynchpin of the Commonwealth's case" and thereby "accomplishing something material for the defense". Commonwealth v. Satterfield, 373 Mass. 109, 115, 364 N.E.2d 1260, 1264 (1977).

The refusal to find that the Petitioner was the recipient of "ineffective" representation on the basis of counsel's failure to introduce scientific evidence was therefore an "unreasonable application" of Strickland. See Ferensic v. Birkett, 451 F. Supp. 2d. 874, 887 (E.D. Mich. 2006). The Magistrate Judge erred in failing to reach this conclusion as did the Federal District Court Judge who failed to address this issue.

Based on the foregoing argument , this Court's rejection of this claim was unreasonable. See Strickland, 466 U.S. at 693-694. The Petitioner has, at the very least, made a "substantial showing of the denial of a constitutional right". 28 U.S.C. Section 2253 (c) (2). "The District Court's application of AEDPA to Petitioner's constitutional claim . . . was debatable amongst jurists of reason". Miller El, 537 U.S. at 337. Therefore, a "COA" should issue. Id. at 338.

**C. Ground Three  - Failure To Call Complainant's Mother As Defense Witness**

The Petitioner has contended that counsel's failure to present "Miriam", "Anna's" mother, as a witness for the defense constituted ineffective assistance of counsel.  Her testimony would likely have provided the jury with statements concerning the animosity between the Petitioner and "Miriam" and significantly bolstered his contention that she and her sister and her mother manipulated "Anna" into filing false sexual assault charges against him.  The Petitioner's affidavit in support of his Motion for New Trial outlines the reasons that such testimony was critical to an effective defense.  (RA.-45-46).

"Anna's" mother, knew that "Anna", despite her accusations of horrendous and despicable acts by the Petitioner, wanted to visit him (RA- 45) and also knew that the Petitioner was so hated by "Miriam's" sister and mother that each of them repeatedly threatened to take actions that would insure his return to prison. (RA.-46). The affidavit further states that "Miriam" knew that the day after the Petitioner received a refund check from the Internal Revenue Service, she initiated proceedings against him for domestic violence, allegedly committed two weeks prior to that date, and obtained a restraining order against him. (RA.-46). After his arrest and release on those charges, he accused her of stealing Five Hundred ($500.00) Dollars from him while he was incarcerated, and demanded that she return the money; when she refused, he retaliated by reporting her to authorities for welfare fraud. (RA.-46). Thereafter, the Petitioner was convicted of violating a restraining order, and while incarcerated on that conviction, was accused of these sexual assault charges. (RA.-46).

Trial counsel was ineffective by failing to show (1) that after the allegations of almost unspeakable brutality committed against "Anna", she wanted to visit him, and (2) that shortly after the petitioner accused "Miriam" of public assistance fraud, he was accused of the crimes in this matter. Moreover, had the attorney called "Anna's" mother to testify, she may have revealed her comment to Scott Keller, a private investigator, made a week after the trial was concluded; specifically, that "Anna" had told her that she had fabricated the charges against the Petitioner. (RA.-44).

The Magistrate Judge in rejecting this claim characterized "Anna's" mother as likely to be hostile to the Petitioner, not helpful and the decision not to call her as a witness a reasonable "tactical decision". (R&R-41).

The Petitioner concedes that such a decision was in fact a "tactical decision", but that it was "manifestly unreasonable". See Commonwealth v. Conley, 43 Mass. App. Ct. 385, 392; 683 N.E.2d 687, 692 (1997); Commonwealth v. Adams, 374 Mass.722,728; 375 N.E.2d 681, 685 (1978). However, even if a decision can be characterized as "tactics" or as "trial strategy", it does not render counsel's decisions immune from scrutiny. Commonwealth v. Hernandez, 63 Mass. App. Ct. 426, 432; 826 N.E.2d (2005). Careful scrutiny of counsel's decision reveals that the prosecutions's version of events was not corroborated by any physical evidence, and that there were many inconsistencies in "Anna's" testimony as set forth in the Petitioner's Objection[9], making the case against the Petitioner far from overwhelming. See United States v. Jenkins, 499 F. Supp. 2d 1268, 1279 (M.D. Fla. 2007); Commonwealth v. Cruz 53 Mass. App. Ct. 393, 405; 759 N.E.2d 723, 734 (2001).

It follows that testimony that "Anna", the only source of evidence against the Petitioner, had told her mother that she had fabricated the sexual assault charges would have greatly assisted the Petitioner and would have been a real factor in the jury's deliberations. See Strickland, 466 U.S. at 693-694. In addition to such exculpatory evidence, the strong evidence of bias as outlined in the Petitioner's affidavit (RA-45-46), would have provided ample ammunition to support the Petitioner's claim that "Miriam", her sister and mother had persuaded "Anna" to fabricate these accusations.

But for this failure of counsel, "there is a reasonable probability the result of the proceedings would have been different." See Strickland, 466 U.S. at 694. The state courts refusal to find that the Petitioner was the recipient of "ineffective" representation on the basis of

---

[9]See Document No. 25, pages 6, 7 and 8.

counsel's failure to call "Anna's" mother as witness was therefore an "unreasonable application" of Strickland. See Ferensic v. Birkett, 451 F. Supp. 2d.at 887.

This Court's failure to address the claim and therefore deny relief was unreasonable. Accordingly, the Petitioner has, at the very least, made a "substantial showing of the denial of a constitutional right". 28 U.S.C. Section 2253 (c) (2). Stated differently, "the District Court's application of AEDPA to Petitioner's constitutional claim . . . was debatable amongst jurists of reason", requiring the issuance of a "COA". Miller El, 537 U.S. at 337.

### D. Ground Four - Grand Jury Proceedings - Motion to Dismiss

The Petitioner has also contended that his counsel was deficient in failing to bring to the Court's attention the fact that Petitioner had been incarcerated during part of the time alleged in the indictments. Trial counsel was well aware that Petitioner was incarcerated from before December, 1993, continuously through his release on May 3, 1994. Yet he never argued this on October 1, 1996 during the hearing on his Motion to Dismiss[10]. This information was critical, because in her grand jury testimony, the same witness that had given inaccurate information regarding whether the complainant was examined by Dr. Rosselot told the grand jury, in response to a question from a juror, that the Petitioner lived with the complainant in her house[11].

Trial counsel should have supported his contention that the prosecutor presented distorted

---

[10] A copy of the Court's ruling on petitioner's Motion to Dismiss is reproduced at Res. Sup. Ans. I, Exhibit 4.

[11] The motion judge acknowledged that potentially exculpatory evidence had been improperly withheld from the Grand Jury. In particular, whether "Anna" had been examined by a doctor after she made her allegations. (RA-39-41) However, the motion was denied by the Court (Brassard, J.) as the withheld information was not sufficiently significant to have made a difference in the jury deliberations. (RA-41)

evidence to the grand jury with this additional example of the prosecutor's failure to correct testimony he knew or should have known to be misleading. If the motion judge had been aware that the prosecutor's failure to correct the misleading testimony regarding Dr. Rosselot was not an isolated instance, and had also been aware of this second mishandled request concerning the period during which the Petitioner was incarcerated, he might well have reached a different conclusion in ruling on the Motion to Dismiss. See Commonwealth v. O'Dell, 392 Mass. 445, 446-447; 466 N.E.2d 828, 830-831 (1984).

      The Magistrate Judge in rejecting this argument failed to address this specific argument and concentrated his decision on whether there was misconduct by the prosecutor in the presentation to the Grand Jury. (R&R-44). Characterizing the witness' answer as "vague" but responsive to the inquiry concerning the time that the Petitioner was living with "Anna", he found no evidence of prosecutorial misconduct. (R&R-44). He then concluded that the failure to include this incarceration information in the challenge to the indictment did not constitute ineffective assistance of counsel. (R&R-44).

      The response to the Grand Juror's question was more than just vague, it was misleading and likely "biased the jury in performing its fact finding function". See United States v. Casas, 425 F.3d 23, 38 (1st Cir. 2005) cert. denied 547 U.S. 1061 (2006); Commonwealth v. O'Dell, 392 Mass. at 446-447; 466 N.E.2d at 830-831. Accordingly, referencing the distorted and misleading evidence in his argument would have likely resulted in a favorable result on the Motion to Dismiss, thereby "accomplishing something material for the defense". Commonwealth v. Satterfield, 373 Mass. at 115; 364 N.E.2d at 1264. See Ouber 293 F 3d at 33.

      The Petitioner has demonstrated that the refusal to find that the Petitioner was the

recipient of "ineffective" representation on the basis of his handling of the Motion to Dismiss was an "unreasonable application" of Strickland by the state courts. See Ferensic v. Birkett, 451 F. Supp. 2d.at 887. The Magistrate Judge ignored this argument; the Federal District Court failed to specifically address this issue.

Based on the foregoing argument, the Petitioner has, at the very least, made a "substantial showing of the denial of a constitutional right". 28 U.S.C. Section 2253 (c) (2). The District Court's application of AEDPA to this constitutional claim was "debatable amongst jurists of reason" and a "COA" should be issued by this Court. Miller El, 537 U.S. at 338.

### E. Ground Five - Aggregate of Claims of Ineffectiveness of Counsel

The Petitioner contends that the multiple errors made by his trial attorney in connection with the fresh complaint evidence, when viewed in conjunction with his failure to introduce available scientific evidence to undercut a significant aspect of the Commonwealth's case ( Dr. Rosselot's testimony), his failure to use evidence available to him to support Petitioner's theory that the complainant was manipulated by "Anna's" mother, aunt and grandmother due to the animosity between the petitioner and the mother's family and his failure to adequately support his Motion to Dismiss the indictments clearly establish that his attorney's representation fell well below that of the ordinary, fallible lawyer. See Strickland, 466 U.S. at 695-696. These errors must be considered in combination, and in doing such analysis it is reasonably likely that the jury's decision would have been different absent his flawed representation. See Lindstadt v. Keane, 239 F.3d 191, 199 (2nd Cir. 2001); (errors should be considered in the aggregate); Stouffer v. Reynolds, 168 F.3d 1155, 1163-1164 (10th Cir. 1999) ["taken alone, no one instance establishes deficient representation. However, cumulatively, each failure underscores a

fundamental lack of formulation and direction in presenting a coherent defense"]. See Commonwealth v. Cancel, 394 Mass. 567, 576; 476 N.E.2d 610, 617 (1985)[12].

The Magistrate Judge in his Report and Recommendations addressed an argument not argued in the Petitioner's Memorandum of Law (Ground Five-Failure to Obtain and Present Evidence At Trial) but did not address this issue, which was raised on pages 19 and 20 of the Petitioner's Memorandum. Nevertheless, the petitioner has shown that by refusing to recognize the prejudice created by the multiple errors of counsel, the state courts unreasonably applied "Strickland". See Stouffer v. Reynolds, 168 F.3d at1163-1164. The Magistrate Judge and the Federal District Court Judge's failure to address this meritorious issue was error. See Strickland 466 U.S. at 693-694.

Based on these multiple errors, this Court's rejection of the constitutional claim was unreasonable. See Lindstadt v. Keane, 239 F.3d at 199. The Petitioner has, at the very least, made a "substantial showing of the denial of a constitutional right", 28 U.S.C. Section 2253 (c) (2), requiring the issuance of a "COA". Miller El, 537 U.S. at 337-338.

## CONCLUSION

For all of the reasons set forth above, the Petitioner respectfully requests that this Court grant his application for a Certificate of Appealability on all issues that he raised in his Petition for the Issuance of a Writ of Habeas Corpus.

---

[12]The Magistrate Judge acknowledged in his discussion of "fresh complaint evidence" that "Strickland" allowed the Court to consider the "cumulative effect" of trial counsel's errors in determining the issue of prejudice. (R&R-35).

        Austin Smith
        Respectfully Submitted,


        /s/ Kenneth G. Littman
        Kenneth G. Littman, Esquire - BBO No: 302060
        251 Cherry Street
        Fall River, MA 02720
        Tel: (508) 675-8900


Dated: March 20, 2008


## CERTIFICATE OF SERVICE

I certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including Maura D. McLaughlin, counsel for Michael A. Thompson, Superintendent, the Respondent in this matter.


        /s/ Kenneth G. Littman
        Kenneth G. Littman, Esquire

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AUSTIN SMITH,<br>  Petitioner | :<br>:<br>: |
| vs. | :   Civil Action No: 05-10777-PBS |
| | : |
| MICHAEL A. THOMPSON,<br>SUPERINTENDENT,<br>  Respondent | :<br>:<br>: |

## APPLICATION FOR CERTIFICATE
## OF APPEALABILITY

  The Federal District Court, by its order entered on March 5, 2008, denied the application of the above-named Petitioner, Austin Smith, for the issuance of a writ of habeas corpus.  The Petitioner desires to appeal from such order to the United States Court of Appeals for the First Circuit, and in order to take such appeal Petitioner respectfully requests that this Court issue a Certificate of Appealability, pursuant to the provisions of Section 2253(c), Title 28, United States Code, and Rule 22(b) of the Federal Rules of Appellate Procedure.

  The Petitioner contends that he is entitled to redress on appeal, and he further contends that a Certificate of Appealability should issue since the Petitioner has made" a substantial showing of a denial of his constitutional rights."  See <u>Miller El v. Cockrell</u>, 537 U.S. 322 (2003)., The Petitioner refers to his Memorandum of Law filed with this Court on March 20, 2008 in support of this Application.

                 Respectfully Submitted,

                 /s/ Kenneth G. Littman
                 Kenneth G. Littman, Esquire - BBO: 302060
                 251 Cherry Street
                 Fall River, MA 02720
                 Tel: (508) 675-8900

**CERTIFICATE OF SERVICE**

I certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including Maura D. McLaughlin, counsel for Respondent Michael A. Thompson, Superintendent in this matter.

/s/ Kenneth G. Littman
Kenneth G. Littman, Esquire